UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TERRY NELSON, JOHN NESSE, CLARK ANDERSON, and GARY MEYERS and their successors in their capacities as Trustees and Fiduciaries of the Painters and Allied Trades District Council No. 82 Health Care Fund, the Painters and Allied Trades District Council No. 82 Vacation Fund, the Painters and Allied Trades District Council 82 STAR Fund, the International Painters and Allied Trades Industry Pension Fund, the Finishing Trades Institute of the Upper Midwest Trust Fund, the National Painting, Decorating, and Drywall Apprenticeship Committee, the St. Paul Painting Industry Pension Fund, the Minneapolis Local 386 Drywall Finishing Industry Pension Fund, the Finishing Trades Institute, the Painters and Allied Trades Labor Management Cooperative Initiative, and each above-named Fund,<br><br>Plaintiffs,<br><br>v.<br><br>FRANA COMPANIES, INC.; DIAMOND DRYWALL, INC.; DAVID STELLMACH; KAREN STELLMACH; TWIN CITIES DRYWALL, INC.; and JOHN DOES 1-2,<br><br>Defendants. | Case No. 13-CV-2219 (PJS/SER)<br><br><br><br><br><br><br><br>ORDER |

Corey J. Ayling, Carl S. Wosmek, and Amy L. Court, MCGRANN SHEA CARNIVAL STRAUGHN & LAMB, CHARTERED, for plaintiff.

Keith J. Broady and Bryan R. Feldhaus, LOMMEN, ABDO, COLE, KING & STAGEBERG, P.A.; Nicholas A. Dolejsi, ZELLE HOFMANN VOELBEL & MASON LLP, for defendant Frana Companies, Inc.

Gregory L. Peters and Martin D. Kappenman, SEATON, PETERS & REVNEW, P.A., for defendants Diamond Drywall, Inc., David Stellmach, and Karen Stellmach.

Defendant Diamond Drywall, Inc. ("Diamond") is a drywall contractor and signatory to certain collective-bargaining agreements ("CBAs") which require Diamond to make certain fringe-benefit contributions to plaintiffs (collectively "the Funds"). Defendants David and Karen Stellmach are the CEO and bookkeeper of Diamond, respectively. Defendant Frana Companies, Inc. ("Frana") is a general contractor that is not a signatory to the CBAs, but that subcontracts drywall work to Diamond and to defendant Twin Cities Drywall, Inc. ("Twin Cities").[1]

The Funds allege that, although Diamond was contractually obligated to pay its employees by the hour, it instead secretly paid on a piece-work basis, thereby depriving its workers of the full amount of wages, overtime, and fringe benefits to which they were entitled. As a result, the Funds allege, Diamond failed to pay the full amount of the fringe-benefit contributions (calculated on a per-hour basis) that were owed to the Funds under the applicable CBAs. To hide this conduct, the Funds allege, Diamond failed to record its employees' hours, destroyed records, and fabricated reports that were sent to the Funds. In addition to seeking the delinquent contributions from Diamond, the Funds allege that Frana is liable for those contributions under theories of alter ego, piercing the corporate veil, agency, and joint venture. Based on these core allegations, the Funds bring 15 claims, including claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., the Minnesota Uniform Fraudulent Transfer Act ("MUFTA"), Minn. Stat. §§ 513.41 et seq., and the common law.

---

[1] Twin Cities is the corporate successor to another signatory of the CBAs. Twin Cities has not appeared in this action and is in default.

This matter is before the Court on the motion of Frana for judgment on the pleadings and the motion of Diamond and the Stellmachs for partial judgment on the pleadings. For the reasons explained at oral argument and briefly summarized below, the Court grants in part the motion of Frana and grants in full the motion of Diamond and the Stellmachs.

*B. Counts 5 through 8*

In Counts 5 through 8, the Funds allege that Frana is liable for its subcontractors' contractual obligations under theories of alter ego, piercing the corporate veil, agency, and joint venture.

As the Court explained at the hearing, the Funds have alleged ample facts to make out a plausible claim that the subcontractors were alter egos of Frana.

> [T]he alter ego doctrine as developed under corporate law provides that the legal fiction of the separate corporate entity may be rejected in the case of a corporation that (1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud. . . . [C]ontrol by one company over its alleged alter ego is necessary under the corporate law standard.

*Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997). The Funds allege that Frana essentially controlled every aspect of its subcontractors' operations. For example, the Funds allege that Frana prepared bids for its subcontractors that had no relation to the subcontractors' own profit and loss or business operations; ordered its subcontractors to take jobs at a loss; required Diamond to farm out employees to other (nonunion) subcontractors; told its subcontractors when and how much to pay their workers; told its subcontractors when and how much to pay for materials; gave its

subcontractors the necessary funds to meet payroll and pay for materials; and waived numerous contractual protections that mark an arm's-length relationship between a general contractor and a subcontractor. The Funds also allege that Diamond did work for no one except Frana and that Diamond's assets are a fraction of what would be needed by a viable, independent contractor. Finally, the Funds allege that, by exercising this control over Diamond, Frana was able to rob Diamond's workers of the wages and benefits to which they were entitled, which in turn allowed Diamond to charge Frana an illegitimately low amount for its drywall work, which in turn allowed Frana to underbid its competitors for construction projects. These allegations are more than enough to allege a plausible claim of alter-ego liability.

The Court will allow the Funds' other vicarious-liability claims to proceed with the alter-ego theory. These alternative theories overlap with the alter-ego theory, and allowing them to go forward will not expand the scope of discovery or inflict a hardship on Frana. After discovery is concluded and a full record is developed, the parties and the Court will be in a better position to determine which of these theories (if any) will survive to trial. The Court therefore denies Frana's motion for judgment on the pleadings with respect to Counts 5 through 8.

### C. Count 9

In Count 9, the Funds seek to hold David Stellmach personally liable for Diamond's obligations under the CBAs. The Funds allege that Stellmach signed a personal guaranty in which he promised to ensure the full performance of Diamond's obligations under the CBAs in the event that Diamond failed to post the required security bond.

Stellmach moves for partial judgment on this count because he did not sign a personal guaranty with respect to a CBA that took effect on May 1, 2012.[2] *See* ECF No. 9-1 at 45. In response, the Funds do not contend that Stellmach signed such a guaranty; instead, they articulate complicated theories involving an evergreen clause in an earlier CBA and ratification by conduct. These theories are nowhere mentioned in the complaint, however, and thus the complaint gives Stellmach no clue as to how the Funds propose to hold him personally liable under the CBA that took effect on May 1, 2012. The Funds' claim that David Stellmach is personally liable for Diamond's obligations under that CBA is not adequately pleaded, and the Court therefore dismisses it without prejudice.

### D. Counts 11 through 13

In Counts 11 through 13, the Funds bring RICO claims against Frana, John Doe 2, and the Stellmachs under 18 U.S.C. §§ 1962(c) and (d). The Funds allege that the predicate acts, for purposes of RICO liability, are (1) mail and wire fraud; (2) violation of 29 U.S.C. § 216, which (among other things) criminalizes willful violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"); and (3) violation of 29 U.S.C. § 1141, which criminalizes the use or threatened use of fraud, force, or violence to interfere with a participant or beneficiary's exercise of rights under an ERISA plan.

The latter two alleged violations are not predicate acts of racketeering activity within the meaning of RICO. *See* 18 U.S.C. § 1961(1). Contrary to the Funds' argument, RICO's definition of "racketeering activity" does not include any and all crimes indictable under Title 29

---

[2]The Court may consider the CBA and the personal guaranty because they are necessarily embraced by the complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

of the United States Code. Instead, its reach under Title 29 is limited to "any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds) . . . ." 18 U.S.C. § 1961(1)(C). Sections 216 and 1141 of Title 29 (which the Funds cite) are not listed in the definition, and the Funds did not plead any predicate acts under §§ 186 and 501(c) (which are listed in the definition).

The only remaining predicate acts, therefore, are the Funds' allegations of mail and wire fraud. To bring a RICO claim predicated on mail and wire fraud, the Funds must meet the pleading requirements of Fed. R. Civ. P. 9(b). *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428-29 (8th Cir. 2009). Rule 9(b) requires a plaintiff to plead fraud with particularity, including the time, place, and contents of the false representations; the identity of the person making the representations; and what was obtained or given up as a result of the representations. *Murr Plumbing. Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

The Funds have not met this standard. Although the Funds allege generally that Diamond mailed false fringe-benefit-fund reports and checks for underpayments, the Funds do not identify with specificity the date or contents of any of these reports or checks, nor do they allege with specificity how the Funds were misled or harmed. This is insufficient under Rule 9(b). Moreover, because the Funds have failed to plead any instance of fraud with particularity, they have likewise failed to adequately plead a pattern of racketeering activity. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011) (plaintiffs must identify at least two specific predicate acts for each defendant). Finally, because the Funds have not properly alleged even a single predicate act of racketeering, they have not adequately pleaded a RICO conspiracy claim.

*See Beck v. Prupis*, 529 U.S. 494, 507 (2000) ("a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute").  The Court therefore dismisses the Funds' RICO claims without prejudice.

### E.  Count 14

In Count 14, the Funds allege that Frana, the Stellmachs, and John Doe 2 violated 29 U.S.C. § 1140, which (1) makes it unlawful to discriminate against participants or beneficiaries of an ERISA plan for exercising their rights under the plan and (2) in the case of a multiemployer plan, makes it unlawful to discriminate against any contributing employer for exercising ERISA rights.  The Funds do not identify any participant, beneficiary, or contributing employer that was the victim of any alleged discrimination, however.  Without identifying a single participant, beneficiary, or contributing employer against whom defendants discriminated, the Funds have failed to allege a plausible, non-speculative claim under § 1140.  *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (a complaint must include sufficient factual matter to raise a right to relief above the speculative level and must state a claim to relief that is plausible on its face).  The Court therefore dismisses this claim without prejudice.

### F.  Count 15

Finally, the Funds bring a fraudulent-transfer claim against the Stellmachs under the MUFTA.  The Funds allege that Diamond's transfers to the Stellmachs — in the form of compensation for their services as CEO and bookkeeper — were both actually and constructively fraudulent.  The Funds do not identify any particular fraudulent transfer, but rather allege that each and every penny paid to the Stellmachs since the day that Diamond was founded was

transferred with actual intent to defraud the Funds and without receiving reasonably equivalent value in exchange. This is not sufficient to meet the particularity standard of Fed. R. Civ. P. 9(b) and is also utterly implausible under *Twombly*. *See Kranz v. Koenig*, 240 F.R.D. 453, 455-56 (D. Minn. 2007) (holding that Rule 9(b) applies to all claims of fraudulent transfer under MUFTA). The Court therefore dismisses this claim without prejudice.

*G. Remaining Counts*

No party has moved for judgment with respect to Counts 1 through 4 and 10, and they remain pending.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of defendant Frana Companies, Inc. for judgment on the pleadings [ECF No. 20] is GRANTED IN PART and DENIED IN PART.

2. The motion of defendants Diamond Drywall, Inc., David Stellmach, and Karen Stellmach for partial judgment on the pleadings [ECF No. 25] is GRANTED.

3. The following claims are DISMISSED WITHOUT PREJUDICE:

    a. Count 9 to the extent that it seeks to hold David Stellmach personally liable for Diamond Drywall, Inc.'s liabilities under the May 1, 2012 CBA.

    b. Counts 11 through 15.

Dated: December 11, 2013        s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge